UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT D. FERGUSON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AON RISK SERVICES COMPANIES, INC., *et al.*, <br><br> Defendants. | Case No. 20-cv-07491 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion for summary judgment [107]. For the reasons stated below, Defendants' motion is granted.

### I. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

1

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## II. Background[1]

Plaintiffs Robert Ferguson, Imipolex LLC ("Imipolex"), and Kansa International Corporation, Ltd., Bankruptcy Estate ("Kansa") are, or are successors to, former shareholders of Lion Holding, Inc., the former parent company of Clarendon National Insurance Company and Clarendon America Insurance Company (together, "Clarendon"). [109] ¶ 1. Defendants Aon Risk Services

---

[1] This Court takes these facts from Aon's Statement of Facts [109], Plaintiffs' Response to Aon's Statement of Facts [122], Plaintiffs' Statement of Additional Facts ("SOAF") [123], Aon's Response to Plaintiffs' SOAF [130], and various exhibits the parties have submitted in connection with Aon's motion for summary judgment. The facts are undisputed unless otherwise noted. Where appropriate, the Court notes what evidence it relies upon in making its decision and ignores evidence that does not comport with the requirements of the Local Rules.

Companies, Inc., Aon Risk Services Central, Inc., and Aon Risk Services Southwest, Inc. (together, "Aon") are insurance brokerage companies. *Id.* ¶ 2.

In 1996 and 1997, Aon assisted Stirling Cooke Brown Holdings, Ltd. ("SCB"), a now-defunct insurance broker, in procuring a professional liability insurance program, that provided insurance coverage to SCB and certain of its subsidiaries, including Raydon Underwriting Management, Ltd. ("Raydon"), for liability incurred because of, among other things, errors made in providing certain professional services (the "1997 Insurance Program"). *Id.* ¶ 3.

### A. SCB's 1997 Insurance Program

The 1997 Insurance Program was a three-year program that began on August 1, 1997. *Id.* ¶ 6. Gulf Insurance Company ("Gulf") provided a primary layer of coverage of $15 million. *Id.* ¶ 7. The program included several layers of excess coverage provided by Reliance Insurance Company ("Reliance"), Executive Risk Specialty Insurance Company ("ERSIC"), Certain Underwriters at Lloyd's, London ("Lloyd's"), and Starr Excess Liability Insurance International Limited ("Starr"). *Id.* ¶ 8. The policies contained a notice provision requiring SCB and Raydon to provide their carriers with prompt notice of any claims made against them. *Id.* ¶¶ 7, 9. The expiration date of the program was later extended to September 1, 2001. *Id.* ¶ 10.

### B. Clarendon's Claims Arising From The PA/LMX Reinsurance Program

Raydon's largest client was Clarendon, a New Jersey-based insurance carrier. *Id.* ¶ 11. In the mid-1990s, Raydon caused Clarendon to participate in a flawed reinsurance program called "PA/LMX," that contained structural defects leading

3

certain of Clarendon's reinsurers in the program to "refuse[ ] to perform their treaties." *Id.* ¶¶ 12–13. This, in turn, "destabilized and ultimately largely destroyed Clarendon's reinsurance protection," causing Clarendon to sustain large losses. *Id.* ¶ 13.

In February 1999, Plaintiffs, who were shareholders in Clarendon's parent company, sold Clarendon to Hannover, a German reinsurer. *Id.* ¶ 14. To complete the sale, Plaintiffs had to indemnify Clarendon for up to $50 million of its alleged PA/LMX-related losses. *Id.* ¶ 15. In exchange, Plaintiffs acquired certain of Clarendon's rights against third parties, including any claims against Raydon arising from the PA/LMX program. *Id.* ¶ 16.

In mid-1999, Plaintiff Robert Ferguson, on behalf of Clarendon, wrote a series of letters to SCB and Raydon, stating that certain of Clarendon's reinsurers had filed arbitrations against Clarendon relating to PA/LMX. *Id.* ¶¶ 17, 19, 21, 23. Ferguson stated that, because Raydon acted on Clarendon's behalf in connection with the program, Clarendon would "look to Raydon, [SCB] and [their insurers]" to indemnify it for any losses arising out of the reinsurers' arbitrations. *Id.* ¶¶ 17, 19, 21, 23. Aon, at SCB's request, delivered to Gulf two of Ferguson's letters dated August 11, 1999 and September 28, 1999, concerning arbitrations filed against Clarendon by two reinsurers. *Id.* ¶¶ 18, 20. Ferguson also sent SCB and Raydon two similar letters dated September 30, 1999 and October 13, 1999 concerning two different reinsurer arbitrations, but neither SCB nor Raydon provided those letters to Aon or asked Aon to deliver them to the carriers. *Id.* ¶¶ 21–24.

C.  **Aon Raise Concerns Regarding SCB's Claims-Notice**

Aon broker Doug Neil testified that in mid-2001, as the 1997 Insurance Program was nearing expiration, Aon advised SCB that Aon "didn't think that [SCB] had provided proper notice of a lot of claims or potential claims" under the program, and that SCB "needed to provide more information [to the carriers] if [SCB] wanted [the claims] to be properly noticed under the entire tower." *Id.* ¶ 25. To provide notice, SCB asked Aon to deliver to the carriers a document called a "claims matrix," that identified numerous outstanding claims against SCB and Raydon, including Clarendon's claims. *Id.* ¶ 26. Aon provided copies of the matrix to Gulf and each of the excess carriers, as SCB requested. *Id.* ¶ 27. The carriers disputed that the matrix constituted proper notice of the claims against SCB and Raydon. A representative of ERSIC, for example, wrote to Aon, stating that it "cannot accept the laundry list of claims [Aon] submitted as notice of potential claims." *Id.* ¶ 28. Similarly, Starr stated that it "ha[d] only received notice of … six individually reported matters," which did not include the Clarendon claims. *Id.* ¶ 29. Aon communicated the insurers' position to SCB in September 2001, advising SCB that "additional information is necessary for the underwriters to formally respond" regarding the claims listed on the matrix. *Id.* ¶ 30. However, the parties dispute Aon's obligation to provide Clarendon's claims to excess carriers and the adequacy of any related communications. [122] ¶¶ 25–27, 30–31; [130] ¶ 10.

### D. Renewal of SCB's Liability Insurance Policies

In 2001, Aon assisted SCB in renewing its professional liability insurance policies for an additional term. [109] ¶ 32. In connection with that renewal, Aon sent SCB a Compensation Agreement, that stated its purpose was "to confirm [SCB's and Aon's] understanding concerning the insurance and/or financial and risk management support services [ ] to be provided by Aon Risk Services, Inc. [ ] to [SCB]." *Id.* ¶¶ 33–34. The agreement also provided that Aon's services would be for SCB's exclusive benefit: "The services and work product provided by [Aon] hereunder are provided for the exclusive use of SCB[], and such services … are not to be distributed to, used or relied upon by other parties without the written agreement of SCB[] and [Aon]." *Id.* ¶ 34. SCB filed for bankruptcy in December 2003. *See In re AlphaStar Ins. Group Ltd.,* No. 03-bk-17903 (Bankr. S.D.N.Y.).

### E. Preliminary Litigation

In December 2005, Plaintiffs sued Raydon in the supreme court of Bermuda, seeking to recover the PA/LMX-related losses for which they had indemnified Clarendon. *Id.* ¶ 36. Raydon was by then defunct and failed to appear in the action. *Id.* ¶ 37. Consequently, the Bermuda court entered an interlocutory default judgment against Raydon in March 2006. *Id.* ¶ 38. In 2009, Plaintiffs "commenced an investigation" to determine whether SCB's carriers received timely notice of the Clarendon claims, to assess whether coverage for their default judgment against Raydon would be available under SCB's professional liability policies. *Id.* ¶ 39. In August 2009, Plaintiffs' counsel reviewed thousands of documents from SCB's

bankruptcy trustee relating to the 1997 Insurance Program, including "extensive communications between SCB, its insurance broker Aon Risk Services, Inc., and SCB's liability insurers." *Id.* ¶ 40.

### F.     SCB's Carriers Deny Coverage

In July 2011, Plaintiffs notified SCB's carriers of their default judgment against Raydon and sought coverage for the judgment. *Id.* ¶ 43. In late 2011 and 2012, the carriers denied coverage based on, among several other grounds, lack of timely notice. Gulf's successor, Travelers Indemnity Company ("Travelers"), for example, stated that it was "not satisfied that Clause IV.G.1 [the policy's notice provision] has been satisfied." *Id.* ¶¶ 44–45. Reliance similarly reserved the right to deny coverage on the same grounds as Travelers. *Id.* ¶ 47. ERSIC also "refused to pay on their E&O policy." *Id.* ¶ 48. And Lloyd's denied coverage because SCB's "policy expired by its terms … without notice having been made." *Id.* ¶ 49.

> On February 7, 2012, Ferguson wrote to Aon stating:
>
> I recently received [a] copy of a January 26, 2012, letter to you from an attorney for [Lloyd's], in connection with an excess liability policy written commencing August 1, 1997. In this letter, the underwriters declare that they are denying coverage for my claim on the basis that "the captioned policy expired by its terms … without notice having been made["]. To assist our evaluation of the underwriters' position and to ensure that we have all relevant facts, could you please inform me whether Aon (including its affiliates) notified the underwriters of this claim?

*Id.* ¶ 50. After receiving no response, Ferguson again contacted Aon on April 12, 2012, asserting "that [Lloyd's] did not receive notice of the claim from Aon" and "renew[ing]

7

[his] request for information whether Aon had given notice of this loss to … any excess insurer." *Id.* ¶¶ 50–51.

In November 2011, Plaintiffs sued Travelers and ERSIC in New Jersey state court, seeking coverage for their judgment against Raydon. *Id.* ¶ 53. Plaintiffs also submitted a proof of claim to the liquidator of Reliance, which was by then in liquidation. *Id.* Reliance and ERSIC both asserted lack of notice as a defense to coverage, in addition to numerous other coverage defenses. *Id.* ¶ 55. Plaintiffs ultimately mediated their coverage dispute with ERSIC and Reliance in March 2019. *Id.* ¶ 54.

### G. Plaintiff's Litigation Against Aon

In February 2019, shortly before settling with ERSIC and Reliance, Plaintiffs sued Aon in New Jersey state court, alleging that Aon failed to notify SCB's excess carriers of Clarendon's claims. *Id.* ¶ 59. Plaintiffs asserted negligence and breach of contract, purportedly as third-party beneficiaries of an alleged contract between Aon and SCB. *Id.* Aon removed the case to the District of New Jersey and filed a motion to dismiss, which the court granted based on lack of personal jurisdiction. *See Ferguson v. Aon Risk Servs. Companies, Inc.*, 2020 WL 914702 (D.N.J. Feb. 26, 2020). Plaintiffs filed this action in Illinois state court in December 2020, again asserting claims against Aon for negligence and breach of contract. *See* Compl. ¶¶ 38–51.

8

**III. Analysis**

    **A. Standing**

Aon argues that Plaintiffs lack standing because they are not third-party beneficiaries of any contract between Aon and SCB. [108] at 10. Plaintiffs respond that they were direct beneficiaries of two separate agreements between Aon and SCB: (1) a 1999 agreement to provide notice of Clarendon's claim against Raydon to the E&O insurers; and (2) a 1996 agreement to tender claims to SCB's E&O insurers.

A person is a third-party beneficiary when "the promisee[] intended to confer a benefit on that party" that is "direct," as opposed to "incidental." *Advanced Concepts Chi., Inc. v. CDW Corp.*, 938 N.E.2d 577, 581 (Ill. App. Ct. 2010). A party can be an intended third-party beneficiary "even if the beneficiary is not named, not identifiable, or not yet in existence" when the contract is executed. *Board of Ed. of Cmty. Sch. Dist. No. 220 v. Village of Hoffman Estates*, 467 N.E.2d 1064, 1067 (Ill. App. Ct. 1984). Intent to benefit is determined by "the terms of the contract and the circumstances surrounding the parties at the time of its execution." *Advanced Concepts*, 938 N.E.2d at 581. "Plaintiffs claiming a right to sue as a third-party beneficiary face an uphill climb in Illinois." *Lippert Mktg., Ltd. v. Kingwood Ceramics, Inc.*, No. 95 C 6490, 1998 WL 699023, at *19 (N.D. Ill. Oct. 5, 1998) (cleaned up). "Illinois has made it very difficult to prove intent to benefit the third party, because 'there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties.'" *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *155 Harbor Drive Condo.*

*Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991)) (emphasis in original).

### 1. 1999 Agreement

As a preliminary matter, Plaintiffs assert that Aon's 1999 agreement to provide notice of Clarendon's claim includes letters from Clarendon to SCB and Raydon dated August 11, 2019, September 28, 1999, September 30, 1999, and October 13, 1999.[2] [120] at 11, 16.

On August 11, 1999, Clarendon wrote a letter to representatives of Raydon and SCB, stating it would "look to Raydon, [SCB] and your insurers to fully indemnify Clarendon for losses it may suffer in… any [] proceedings arising from the 1994 or 1995 LMX years of account" and requested a standstill agreement. [130] ¶ 6; [109-23] at 4. Clarendon also asked Raydon to "forward this additional information to your insurers." [130] ¶ 6; [109-23] at 2. A day later, Raydon faxed Clarendon's letter to a broker at Aon and requested that Aon "[p]lease put underwriters on notice" of Clarendon's request for a standstill agreement. [109] ¶ 18.

On September 28, 1999, Clarendon wrote another letter to representatives of Raydon and SCB, stating that Lincoln National Insurance Company had initiated arbitration proceedings against Clarendon relating to PA/LMX, and that Clarendon would "look to Raydon, [SCB] and [their] insurers" to indemnify Clarendon in respect of that dispute. [109] ¶ 19; [109-24] at 9. Raydon forwarded Clarendon's letter to Aon

---

[2] Aon argues Plaintiffs cannot rely on the September 28 letter because it was not included in their previous discovery responses. [108] at 1 n.1. Because the Court finds that Plaintiffs are not third-party beneficiaries even if they may rely on the letter, it does not need to resolve this dispute.

with instructions that "Clarendon indicates they will look to Raydon and/or their insurers to participate in any judgment or settlement. [P]lease provide a copy of the attached letter to the appropriate E&O insurers for their attention." [109-24] at 3. Aon delivered Clarendon's September 28, 1999 letter to Gulf on October 14, 1999. Id. at 2.

Plaintiffs also highlight that Raydon's former claims manager, Michael Sheehan, stated in affidavit that "Raydon understood Clarendon's [September 28, 1999] letter to be a request to put all of Raydon's errors and omissions insurance carriers on notice of Clarendon's claims so that insurance coverage would be available to pay Clarendon in the event that it was subsequently determined that Raydon was responsible for Clarendon's losses." [122-11] ¶ 5.

Plaintiffs argue that the 1999 agreement discharged Raydon's duty to Clarendon and the terms of the agreement show an intent to confer a direct benefit on Clarendon. The Court disagrees.

First, there is no express language in the letters (1999 agreement) that the parties intended to discharge Raydon's duty to Clarendon. *See Robson v. Robson*, 514 F. Supp. 99, 102 (N.D. Ill. 1981) ("contract language must reflect "the express intent that the performance contracted for is to satisfy and discharge a pre-existing duty or liability" to the third party); Restatement (Second) of Contracts § 302 cmt. d. (requiring "a promise to satisfy the duty of a third person"). Thus, "[a]ny attempted reliance" on the 1999 agreement "to establish a duty that benefits" Clarendon as a third-party beneficiary is misplaced, as there is "no express provision in that contract

11

that" creates any such duty. *Taylor v. Facility Constructors, Inc.*, 360 F. Supp. 2d 887, 894 (N.D. Ill. 2005).

Second, the affidavit does not mention Aon or any intent by Aon and SCB or Raydon to enter into an express agreement to discharge Raydon's duty to Clarendon. This falls short of the express language requirement imposed by Illinois law. *See Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009) (creation of third-party beneficiary "must be shown by an express provision in the contract"); *155 Harbor Drive Condo. Ass'n*, 568 N.E.2d at 375 (declining to recognize third-party beneficiary where plaintiff "failed to identify any language in the [contract] which constitutes a virtual express declaration to overcome the presumption that the parties contracted only for themselves").

The court finds that the 1999 agreement does not confer Plaintiffs standing to sue Aon as third-party beneficiaries under Illinois law. *See Martis*, 905 N.E.2d at 924. ("That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties."); *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 524 (Ill. App. Ct. 2010) (noting that for contract to "create a duty toward plaintiff" as a third-party beneficiary, "the contract's language must show that the contract was made for the direct benefit of the third person").

### 2. 1996 Agreement

Plaintiffs also argue that they are third-party beneficiaries under Aon's 1996 agreement, which consists of Aon's agreement to tender and manage claims under

the E&O policies outlined in the December 1996 scope of work proposal that was supplemented by a March 1997 insurance application and accepted by SCB through July 1997 confirmations of orders for the policies. [120] at 14.

The 1996 scope of work proposal does not mention Clarendon, and its former outside counsel testified that the proposal "is different from a contract." [109] ¶ 63. The March 1997 insurance application identifies Clarendon as an "admitted insurance carrier [] [SCB] place[d] standard business with," and Clarendon's former outside counsel testified that "the purpose of the insurance application is not to form an agreement between the prospective insured and its broker." *Id.* ¶ 64. Lastly, the July 1997 order confirmation does not mention Clarendon. *Id.* ¶ 65.

Overall, these documents are not a contract. *See TNT Logistics N. Am., Inc. v. Bailly Ridge TNT, LLC*, No. 05 C 7219, 2006 WL 2726224, at *7 (N.D. Ill. Sept. 21, 2006) (a "proposal" did not create any "contractual obligation"). Further, Clarendon is mentioned only one time in one of the documents, specifically, SCB's 1997 insurance application. [109-14] at 8. Thus, like the 1999 agreement, Plaintiffs fail to identify any language in those documents *expressly conferring a benefit on Clarendon. See Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. Ct. 1989) ("Liability to a third-party *must affirmatively appear from the contract's language* and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." (emphasis added)); *see also Tax Investments, Ltd. v. Fed. Deposit Ins. Corp.*, 763 F. Supp. 1452, 1457 (N.D. Ill. 1991)

13

(language of contract "*reinforced* by the surrounding circumstances" (emphasis added)).

### B. Statute of Limitations

Aon also argues that Plaintiffs' contract claim is time-barred as a matter of law. [108] at 16. Under Illinois law, which supplies the limitations period here, there is a two-year statute of limitations for "*all* causes of action brought by *any* person or entity under *any* theory" against an insurance broker such as Aon. *Indiana Ins. Co. v. Machon & Machon, Inc.*, 753 N.E.2d 442, 445 (Ill. App. Ct. 2001) (emphases in original). A claim for breach of contract "accrues at the time of the breach of contract, not when a party sustains damages." *Id.*; *see also Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995) (same). The discovery rule "delays the start of the limitations period until the claimant knew or reasonably should have known of the injury and that the injury was wrongfully caused." *Am. Fam. Mut. Ins. Co. v. Krop*, 120 N.E.3d 982, 987–88 (Ill. 2018).

Plaintiffs assert Aon failed to notify SCB's carriers of Clarendon's notices of claim, thereby breaching its contract with SCB, in mid-1999. Compl. ¶ 28. Plaintiffs argue that Illinois' "discovery rule" tolls the statute of limitations. The Court disagrees.

Here, Plaintiffs "commenced an investigation" specifically to determine whether SCB's carriers received timely notice of Clarendon's claims in mid-2009. Compl. ¶ 33; [109] ¶ 39. On February 7, 2012, for example, Ferguson wrote to Aon, asking "whether Aon (including its affiliates) notified the underwriters of [his] claim."

14

[109] ¶ 50. Two months later, Ferguson again wrote to Aon, stating his belief that certain excess carriers "did not receive notice of the claim from Aon" and "renew[ing] [his] request for information whether Aon had given notice" to "any excess insurer." *Id.* ¶ 51. These letters reflect Plaintiffs' understanding that the excess carriers disputed receiving notice of Clarendon's claims, and Plaintiffs' belief that Aon was responsible for providing such notice. Even though Aon apparently never responded to Ferguson's letters, this "fail[ure] to communicate further would only add to a reasonable person's notice that he or she needed to take additional action." *Strauss v. Pankow*, 2016 WL 7166098, at *6 (Ill. App. Dec. 7, 2016).

Plaintiffs also contend that Aon is estopped from asserting a limitations defense due to "Aon's misleading conduct and active concealment of its failure to correctly tender Clarendon's claim." [120] at 17. However, "[a] plaintiff claiming estoppel must have had no knowledge or means of discovering the true facts within the period of limitations." *J.S. Reimer, Inc. v. Vill. of Orland Hills*, 990 N.E.2d 831, 839 (Ill. App. Ct. 2013). Further, "[a] party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." *Id.* (cleaned up). Here, Plaintiffs cannot rely on estoppel because they had access to ample documentation that alerted them to any claim against Aon and did not exercise diligence in pursuing such claims.

Overall, Plaintiffs not only were "on inquiry" of the late-notice issues underlying their contract claim, but in fact were aware of those issues for over seven

15

years before they sued Aon in February 2019.[3] Plaintiffs "possessed [ ] sufficient information concerning [their] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved," thereby triggering the statute of limitations. *Hermitage*, 651 N.E.2d at 1139; *see also RVP*, 82 N.E.3d 619, 624 (Ill. App. 2017) (similar). Thus, Plaintiffs' claim is also time-barred.

## IV. Conclusion

For the stated reasons, Defendants' motion for summary judgment [107] is granted.

E N T E R:

Dated: May 17, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[3] The parties dispute whether the two-year statute of limitations for claims against insurance brokers, *Indiana Ins. Co. v. Machon & Machon, Inc.*, 753 N.E.2d 442, 445 (Ill. App. Ct. 2001), or the five-year statute of limitations for actions on oral contracts, 735 ILCS 5/13-205, applies here. [120] at 17; [129] at 8 n.4. The Court does not need to resolve this dispute because it finds that the statute of limitations began to run seven years before Plaintiffs filed suit.

16